**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HELENA DUMAS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 15 CV 5258 |
| v. | ) ) | |
| DELTA DENTAL OF ILLINOIS, | ) ) | Hon. Andrea R. Wood |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF HER UNOPPOSED MOTION FOR
<u>FINAL APPROVAL OF THE PARTIES' CLASS ACTION SETTLEMENT</u>**

## I. Introduction

This Court granted preliminary approval of the Parties' Class Action Settlement Agreement (the "Settlement Agreement") on January 20, 2016 (Doc. No. 31), and the Parties now seek final approval of the Settlement. Final approval is warranted because the Parties' Settlement far exceeds the required class settlement standard: 70 Settlement Class Members, out of a possible 123, submitted timely claim forms, meaning that approximately 56.9% of the Class Members elected to participate in the Settlement. Further, the Parties' Settlement is strongly supported by the Class Members. Out of the 123 eligible Settlement Class Members, only three filed a request for exclusion, and <u>none</u> filed objections to the Settlement. The Settlement provides an outstanding result for the Settlement Class.

Final approval of a class action settlement is appropriate where the court determines that a settlement is fair, adequate, and reasonable. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2005). The results achieved on behalf of the Settlement Class in this case

comfortably meet this standard. Accordingly, Plaintiff requests that the Court enter the proposed Final Approval and Dismissal Order, attached hereto as Exhibit 1.

## II. Statement of Facts

### A. Factual and Procedural Background

On June 15, 2015, Plaintiff Helena Dumas ("Named Plaintiff") filed this Action in the United States District Court for the Northern District of Illinois, Eastern Division, on behalf of herself and others similarly situated, alleging that Defendant Delta Dental Plans Association failed to pay her and other similarly situated employees in accordance with the Fair Labor Standards Act, 29 U.S.C. 201 *et seq*. (the "FLSA")[1], the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq*. (the "IMWL"), and the Illinois Wage Payment Collection Act, 820 ILCS 115/1 *et seq*. (the "IWPCA"). Specifically, the Named Plaintiff alleged that Defendant knowingly required or permitted the Named Plaintiff, who worked as a telephone-dedicated employee in the position of client service representative, and other similarly situated telephone-dedicated employees to perform unpaid work before and after the start and end times of their shifts, including, but not limited to, booting up computers, initializing several software programs, reading company issued emails and instructions, completing customer service calls, sending and receiving faxes, taking documents to the mail room, and taking documents to be shredded. The Named Plaintiff also alleged that Defendant knowingly required or permitted the Named Plaintiff and those similarly situated to her to perform unpaid work for Defendant on their break periods, including meal breaks. On July 6, 2015, the Named Plaintiff filed an Amended Complaint which named the correct and current Defendant, Delta Dental of Illinois (Doc. No. 9).

---

[1] Named Plaintiff's FLSA Claims were brought on an individual basis.

Defendant denies that it engaged in any misconduct in connection with its wage and hour practices, and it further denies that it has any liability or engaged in wrongdoing of any kind associated with the claims alleged by the Named Plaintiff in the Action. Specifically, Defendant denies that its pay practices failed to comply with the FLSA, the IMWL, the IWPCA, or any other federal or state law.

In approximately August 2015, the Parties began discussing the possibility of a resolution of this matter. The Parties jointly moved for a stay of this matter to allow them to engage in informal discovery and attempt to resolve the matter (Doc. No. 19), and the Court granted that motion on September 2, 2015. (Doc. No. 21). The Parties have actively engaged in significant informal discovery, and Defendant produced class-wide data regarding the claims, including payroll, timekeeping and computer and telephone log in/out data for putative class members.

The Parties engaged in settlement discussions. Ultimately, the Parties reached an agreement regarding the parameters of a settlement of this matter, and subsequently finalized the terms of their Settlement Agreement.

B. The Court's Preliminary Approval Order

On January 15, 2016, Plaintiff filed her Unopposed Motion for Preliminary Approval of the Parties' Proposed Class Action Settlement. (Doc. No. 26, 28). On January 20, 2016, the Court granted preliminary approval of the Parties' proposed settlement ("Preliminary Approval Order") and scheduled a final settlement fairness hearing for April 21, 2016, at 10:00 a.m. (Doc. No. 31, ¶7). The Court specifically found, on a preliminary basis, that the Settlement is fair, reasonable, and adequate. *Id*. at ¶ 3. In addition, the Court approved, as to form and content, the proposed Class Notice, and directed notice to be sent to the class. *Id*. at ¶ 6. After entry of the Preliminary Approval Order, pursuant to the terms of the Settlement Agreement, the Claims Administrator

issued notice to the Settlement Class Members by the means approved by the Court and agreed to by the Parties in the Settlement Agreement. Ex. 2, Dahl Decl., ¶¶ 4-10.

Accordingly, on January 29, 2016, the Claims Administrator mailed the Court-approved Class Notice to the 123 Settlement Class Members. *Id*. at ¶ 6. As required by the Settlement Agreement, the Class Notice informed Settlement Class Members of: their right to participate in the Settlement and receive their individual Settlement Payment; their ability to learn more detailed information by contacting the Claims Administrator and/or Class Counsel; and their right to object to or exclude themselves from the Settlement. *Id*. at Ex. A.

The deadline to submit an objection or request exclusion from the Settlement was March 14, 2016. Only three Settlement Class Members requested exclusion from the Settlement, and none objected to the Settlement. *Id*. at ¶¶ 11-12.

### III. Plaintiff Has Satisfied the Requisite Notice Requirements

The notice protocol provided by the Settlement Agreement fully comports with the Federal Rules and due process. Rule 23(c)(2)(B) requires the Court to direct to class members the "best notice that is practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). In *Eisen*, the Supreme Court held that notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2). *Id*. Where the names and addresses of the class members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id*. at 175.

The Claims Administrator has fully performed all of its obligations and the Parties have complied with all terms of this Court's Preliminary Approval Order. Specifically, on January 29, 2016, the Claims Administrator mailed the Class Notice to 123 Settlement Class Members. Ex. 2,

at ¶ 6. Before mailing the Class Notice, the Claims Administrator processed and updated the addresses using the National Change of Address Database ("NCOA") maintained by the United States Postal Service. *Id*. at ¶ 5. If a Class Notice was undeliverable and returned to the Claims Administrator with a change of address notice, the Claims Administrator re-mailed the Class Notice to the updated address. *Id*. at ¶ 8. Regarding those Class Notices that were returned to the Claims Administrator without a change of address notice, the Claims Administrator performed advanced searches, known as "skip tracing," using the Class Members' names and previous addresses in its attempt to locate current addresses. *Id*. at ¶ 7. If a new address was found, the Claims Administrator re-mailed the Class Notice. *Id*. Thus, the Parties' and the Claims Administrator's efforts to effectuate notice to the Settlement Class Members met the requirements of Rule 23(c)(2)(B), and comported with due process.

## IV. The Court Should Finally Approve the Settlement Because it is Fair, Reasonable, and Adequate

Settlement of class action litigation is favored by federal courts, particularly in complex class actions. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *American International Group, Inc. v. ACE INA Holdings, Inc*., 2012 U.S. Dist. LEXIS 25265 (N.D.Ill., Feb. 28, 2012) (Gettleman, J.). To approve a proposed settlement of a class action under Rule 23, the Court must find that the proposed settlement is "fair, adequate, and reasonable." Fed. R. Civ. P. 23(e)(1)(C); *Synfuel*, 463 F.3d at 652. Courts in the Seventh Circuit view the facts in the light most favorable to the settlement. *Isby*, 75 F.3d at 1199. Further, a court should not substitute its own judgment as to optimal settlement terms for the judgment of the litigants and their counsel. *Armstrong v. Bd. Of Sch. Dirs*., 616 F.2d 305, 315 (7th Cir. 1980). In making its determination, a court must consider the following factors: (1) the strength of plaintiff's case compared with the terms of the proposed settlement; (2) the likely complexity, length, and expense of continued litigation; (3) the

amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of proceedings and the amount of discovery completed. *Synfuel*, 463 F.3d at 653.

Further, a court must view the settlement in its entirety, rather than focus on an individual component. *Isby*, 75 F.3d at 1199. Finally, a strong presumption of fairness exists when the settlement is the result of extensive arms-length negotiations. *Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F.Supp. 1130, 1149, n. 6 (N.D.Ill. 1997). When evaluated under these factors, the Parties' Settlement is fair, adequate, and reasonable.

> A. Final Approval of the Settlement is Warranted Based on the Strength of Plaintiff's Case as Compared to the Value of the Settlement, and Allocation of the <u>Settlement Payment is Reasonable</u>

The most important consideration is the strength of the plaintiff's case compared to the value of the settlement. *Synfuel*, 463 F.3d at 653. Courts, however, "have been admonished 'to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). Accordingly, when deciding whether to approve the Settlement, this Court must focus on the general principles of fairness and reasonableness, but not on the substantive law governing Plaintiff's claims. *Id*.

Should this litigation continue, there are a range of possible outcomes including ones far less favorable to Plaintiff and the Settlement Class Members, including the very real prospect that they might receive nothing at all. Indeed, significant litigation risks remain in obtaining class action certification in this matter (as the matter was certified for settlement purposes only), proving liability, and establishing damages, and aspects of the case could be subject to ultimate rejection. *Bona fide* disputes exist as to whether Plaintiff and the Settlement Class Members were compensated in accordance with Illinois and federal wage laws, as well as the nature and extent of

their potential damages. Thus, as in any complex action, the Plaintiff generally faced uncertainties. *See West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced.").

Determining a "reasonable" settlement amount is never simply a mathematical calculation that yields a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a settlement…." *Newman v. Stein*, 464 F.2d 689, 693 (2nd Cir. 1972). This case is no different in that, prior to beginning negotiations, there was a range of potential settlements that would have been reasonable.

The Settlement provides substantial monetary benefits now, without the time, difficulties, expense and uncertainty of further litigation and without the years of delay any appeal might cause. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (a settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial."). Each Settlement Class Member's settlement payment was calculated pursuant to the formula set forth in Paragraph V.9(a) of the Settlement Agreement, and is based on the number of weeks the Settlement Class Member worked for Defendant in a telephone-dedicated position during the Class Period. These settlement calculations were based upon objective data reviewed and analyzed by both parties. Thus, the Settlement ensures that all participating Settlement Class Members will receive reasonable monetary relief. Consequently, this factor supports a finding that the Settlement is fair, adequate, and reasonable.

> B. Final Approval of the Settlement is Warranted in Light of the Likely Increase in <u>the Complexity, Length, and Expense of Further Litigation</u>

Avoiding the delay and risk of protracted litigation is another reason counsel frequently recommends, and thus courts approve, settlements. *See, e.g., Protective Committee for Indep.*

*Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968) (judge must consider "the complexity, expense, and likely duration of the litigation); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). This consideration applies with full force to this case.

Further litigation would require the risk, time and expense associated with a motion for class certification, trial, and possible appeals. Trial of this action alone would consume several weeks and require the expenditure of hundreds of thousands of dollars in additional costs and attorney time. As such, the costs of further litigation become considerable in terms of both time and money with uncertain results. Under these circumstances, the benefits of a guaranteed recovery today, rather than an uncertain result years in the future, are readily apparent.

### C. There is No Opposition to the Settlement

No Settlement Class Member objected to the Settlement, and only three Settlement Class Members excluded themselves from the Settlement. The lack of objectors and minimal number of exclusions indicates support for the Settlement and strongly favors a finding that it is "fair and reasonable." *Am. Civil Liberties Union v. United States Gen. Servs. Admin.*, 235 F.Supp.2d 816, 819 (N.D.Ill. 2002). The fact that "99.9% of class members have neither opted-out nor filed objections to the proposed settlements… [is] strong circumstantial evidence favoring settlement." *In re Mexico Money Transfer Litig.*, 164 F.Supp.2d 1002, 1020-21 (N.D.Ill. 2000).

### D. The Opinion of Competent and Experienced Counsel Favors Final Settlement

Where Class Counsel are qualified, courts heavily rely on their opinion that the settlement is fair, reasonable, and adequate, especially where discovery and settlement negotiations are thorough and extensive. *See Isby*, 75 F.3d at 1200. Here, Class Counsel, who are experienced and knowledgeable in wage and hour class action litigation, are intimately familiar with the strengths and weaknesses of this case. Ex. 3, Bormes Decl., at ¶¶ 9-12; Ex. 4, Ryan Decl., at ¶¶ 7-9, 11.

Based on their extensive vetting of the legal and factual issues in the face of vigorous opposition by Defendant, it is Class Counsel's judgment that the Settlement is fair, reasonable, and adequate. Ex. 3, at ¶ 12; Ex. 4, at ¶ 11. Class Counsel reached their opinion based on their experience, an intimate knowledge of the facts and the legal issues in this case, and a comprehensive analysis of the strengths, weaknesses and value of the claims and defenses balanced against the risks, time, costs and expense of further protracted litigation and appeals. Ex. 3, at ¶¶ 9-12, 17-19, 22; Ex. 4, at ¶ 11.

### E. The Stage of Proceedings and Discovery Completed Heavily Weigh in Favor of Final Approval of the Settlement

This complex class action was resolved only after Class Counsel conducted extensive research, data analysis, and informal discovery. Thus, the stage of litigation has advanced to a state that Class Counsel could and have fairly and fully evaluated the merits of the case, potential damages, and the probable course of the litigation absent settlement. Ex. 3, at ¶¶ 9-12; Ex. 4, at ¶¶ 7-9, 11. As a result, the Parties negotiated the Settlement with detailed knowledge regarding the strengths and weaknesses of the case and the benefits of the Settlement.

### F. The Settlement Was the Result of Arms-Length Negotiations, Without Any Hint of Collusion

There is plainly no collusion or fraud with respect to this proposed Settlement, which was reached only after the Parties conducted significant discovery, including the production of a voluminous amount of relevant data, and after substantial and arms-length negotiations between the Parties. As a distinguished commentator on class actions has noted:

> There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.
>
> * * *

> The initial presumption of fairness of a class settlement may be established by showing:
>
> a. That the settlement has been arrived at by arm's-length bargaining;
>
> b. That sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently; and
>
> c. That the proponents of the settlement are counsel experienced in similar litigation.

5 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.41 at 11-88, 11-91 (4th ed. 2002). In this case, as explained above, the terms of the Settlement were reached during extensive arms-length negotiations by experienced counsel after thorough investigation and analysis. The foregoing demonstrates that the proposed settlement is fair and reasonable.

### V. Class Counsels' Request for Attorneys' Fees and Costs Are Warranted by the Outstanding Result

#### A. Class Counsels' Request for Attorneys' Fees and Costs Is Reasonable

The FLSA, IMWL and IWPCA provide that reasonable attorneys' fees and costs shall be awarded to prevailing plaintiffs. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); 820 ILCS § 105/12(a) ("If any employee is paid by his employer less than the wage to which he is entitled under the provisions of this Act, the employee may recover in a civil action the amount of any such underpayments together with costs and such reasonable attorney's fees as may be allowed by the Court…."); 820 ILCS 115/14(a).

When fee-shifting statutes such as the FLSA, the IMWL, and the IWPCA are involved, parties may negotiate settlements that encompass a defendant's total liability for damages, attorney fees, and costs. *See Evans v. Jeff D*., 475 U.S. 717, 733-34, 738 n. 30 (1986); *see also Williams v. MGM-Pathe Communications Co*., 129 F.3d 1026, 1027 (9th Cir. 1997) ("parties to a class action

properly may not negotiate not only the settlement of the action itself, but also the payment of attorney's fees."); Newberg, at § 15:32. Here, Defendant has agreed not to oppose Class Counsels' request for fees in an amount up to Thirty-Two Thousand Three Hundred Sixty and 30/100 Dollars ($32,360.30), and litigation costs in the amount of Two Thousand Dollars ($2,000.00). Ex. 3, Bormes Decl., at ¶ 21.

Under the common fund doctrine, "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). To determine what percentage of the fund should be awarded, the district court looks to the market price for legal services, which has traditionally ranged from 33% to 40% in comparable litigation. *See Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) (upholding award of 38% of common fund, and stating that "The typical contingent fee is between 33 and 40 percent…."); *see also Meyenberg v. Exxon Mobil Corp.*, 2006 U.S. Dist. LEXIS 52962 at *5 (S.D.Ill., July 31, 2006) (Wilkerson, J.) ("The Court is independently aware that 33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentage in this legal marketplace for comparable commercial litigation.").

Plaintiff's counsel here seek a fee of thirty-five percent of the common fund, which is reasonable and in accordance with the fees awarded in the case law set forth above, and is consistent with the standard contingent fee percentage in the legal marketplace for comparable cases. *See Gaskill*, 160 F.3d at 362; *Meyenberg*, 2006 U.S. Dist. LEXIS 52962 at *5. In wage and hour litigation – like this case – fee awards of between thirty-three and forty percent are traditional in common fund cases. *Id.* Notably, Plaintiff's counsel have recently awarded attorneys' fees and costs in the amount of forty percent (40%) of the common fund obtained for the class. *See Williams-Green v. J. Alexander's Restaurants, Inc.*, No. 09-cv-5707, Doc. No. 138 (N.D. Ill., Dec.

11

21, 2012) (Cole, J.); *Chambers v. Chase*, No. 11 cv 6014, Doc. No. 73 (N.D. Ill., Aug. 14, 2013) (Keys, J.); *Nimely v. Randstad General Partners (US), LLC*, No. 12-cv-10431, Doc. No. 85 (N.D.Ill. Mar. 25, 2014) (Bucklo, J.); *Williams v. Illinois Title Loans, Inc.*, 13 CH 24303 (Circuit Court of Cook County, Nov. 24, 2014) (Kennedy, J.). Accordingly, Plaintiff requests that this Court award Class Counsel attorneys' fees in the amount of thirty-five percent of the Settlement amount, and costs in the amount of $2.000.00. This request is well-within the market rate and facially reasonable. Moreover, awarding, that percentage of the fund to Class Counsel in no way reduces the amounts to be paid to each of the Settlement Class Members.

      B. Plaintiff's Request is Warranted by the Benefit Conferred on the Class, the Results, and the Risks Taken by Class Counsel

Class Counsel's fee request is also warranted in light of the significant and immediate financial benefit to the Settlement Class Members, not one of whom objected to the request. Settlement Class Members will receive substantial relief without having to provide or respond to written discovery, without having to sit for depositions, or go through a trial in which they would have to prevail on liability in the face of Defendant's numerous defenses, both to class certification and on the merits. The Parties' settlement provides immediate benefit to the Settlement Class Members, avoiding the expense, risks, defenses and delays of certification briefing, trial and appeals. These results were only achieved after Class Counsel spent significant time developing and prosecuting this case.

In addition, Settlement Class Members were not required to sign general releases to participate in the Settlement; instead, their release was limited to unpaid wage claims against Defendant only. Ex. 3, Bormes Decl., at ¶ 19. The absence of a general release further exemplifies the excellent results achieved for the Class. *See Ramah Navajo Chapter v. Babbitt*, 50 F.Supp.2d

1091, 1103-04 (D.N.M. 1999) (noting the limited, rather than general, nature of the release as further evidence of an exceptional result in favor of class members).

Further, Class Counsel assumed a substantial risk of non-payment given the difficult and complex issues of law and fact that required sophisticated examination and analysis. Ex. 3, at ¶¶ 14-16. These tasks were performed at a high level, without compensation and with the risk of no compensation. The prosecution of this action consumed the attention and time of Class Counsel, sometimes to the total exclusion of other matters. Finally, Plaintiff's outstanding result serves the purpose of the FLSA, the IMWL, and the IWPCA by vindicating rights these statutes were enacted to protect. Accordingly, based on the risk Class Counsel undertook in engaging in this litigation, the quality of legal services rendered, and the uncertainty of recovery and the results obtained, Class Counsel request this Court to grant their unopposed request for attorneys' fees and costs in the total amount of $34,360.30.

## VI. An Incentive Award to the Named Plaintiff Is Warranted by the Outstanding Result

In her Motion for Preliminary Approval, Plaintiff informed the Court of her intention to seek an Incentive Award for herself, to acknowledge her risk, service, time expended, and substantial benefits to the class. Doc. No. 28, pp. 13-14. The Class Notice advised that Named Plaintiff would request that the amount of $5,000.00 be paid to her from the Settlement. No Class Member objected to the Incentive Award requested.

"Incentive awards are justified when necessary to induce individuals to become named representatives." *In re Synthoid Marketing Litigation*, 264 F.3d 712, 722-23 (7th Cir. 2001). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook*

*v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Recently, a court in this district approved an incentive award of $25,000.00 per named plaintiff. *American International Group, Inc.*, 2012 U.S. Dist. LEXIS 25265 at *59. Other decisions have approved incentive awards as high as $20,000 per named plaintiff. *See Berger v. Xerox Corp. Ret. Income Guar. Plan*, 2004 U.S. Dist. LEXIS 1819 at *7 (S.D.Ill., Jan. 22, 2004) (Herndon, J.).

The Named Plaintiff's role in this litigation was crucial. Named Plaintiff sacrificed a substantial amount of time and effort to prosecute this lawsuit on behalf of her fellow current and former employees. She met, conferred, and regularly corresponded with her counsel, remained involved in the settlement negotiations, and reviewed the settlement documents. Ex. 3, at ¶ 20. Accordingly, Named Plaintiff requests that this Court grant her request for an Incentive Award in the amount of $5,000.00 to him, as such payment is fair and reasonable.

### VII. Conclusion

For the reasons set forth above, the Parties respectfully request that the Court: (1) grant final approval of the Settlement Agreement; (2) find the Settlement fair, reasonable, adequate, and in the best interests of the Settlement Class Members; (3) approve Class Counsel's application for an award of attorneys' fees and costs; (4) approve the Incentive Award to the Named Plaintiff; and (5) enter the Final Approval and Dismissal Order to dismiss this Lawsuit.

Respectfully submitted,

HELENA DUMAS, individually and on behalf of a certified class of persons similarly situated,

/s/ James X. Bormes
One of Plaintiff's Attorneys

| | |
|---|---|
| James X. Bormes | Thomas M. Ryan |
| Catherine P. Sons | Law Office of Thomas M. Ryan, P.C. |
| Law Office of James X. Bormes, P.C. | 35 E. Wacker Drive |
| 8 South Michigan Avenue | Suite 650 |
| Suite 2600 | Chicago, Illinois 60601 |
| Chicago, Illinois 60603 | (312) 726-3400 |
| (312) 201-0575 | |